Robert P. POSTELL, Plaintiff,

v.

AMANA REFRIGERATION, INC., a Subsidiary of Raytheon Company, Defendant.

Civ. A. No. C78–150A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 5, 1980.

C. Lawrence Jewett, Robert G. Young, Webb, Young, Daniel & Murphy, P. C., Atlanta, Ga., for plaintiff.

Anthony L. Cochran, Daryll Love, Allen S. C. Willingham, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

## ORDER

MOYE, Chief Judge.

Presently before the Court is defendant Amana's motion for an order pursuant to Fed.R.Civ.P. 35(a) requiring the plaintiff, Robert P. Postell, to submit to a physical examination of his left eye by Dr. Budd Appleton.

Normally, the examination of a plaintiff alleging physical injuries is conducted pursuant to an agreement between the attorneys for the parties. Exhibit A to defend-ant's brief in support of its motion to compel discloses that counsel for defendant Amana, in a letter dated April 3, 1980, requested counsel for plaintiff to arrange to make Mr. Postell available for examination by an ophthalmologist of defendant's choosing, Dr. Budd Appleton. The letter offered to have Dr. Appleton examine Mr. Postell in Atlanta with the defendant absorbing all costs. The plaintiff has refused to make himself voluntarily available for examination.

Because of plaintiff's failure to voluntarily cooperate, defendant has moved to compel plaintiff to submit to an examination pursuant to Fed.R.Civ.P. 35(a) which reads as follows:

(a) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The conditions under which a Rule 35(a) order shall properly issue are essentially as follows: (1) the mental or physical condition of a party must be in controversy; and (2) the order must be made only on motion for good cause shown. To facilitate discovery Rule 35(a) should be liberally construed in favor of granting discovery. 4A Moore's Federal Practice ¶ 35.04.

Here, the physical condition of plaintiff's left eye is clearly in controversy, as his complaint alleges that radiation from an Amana—built microwave oven caused a cataract to form therein. The only real question for the Court then is whether the motion is for good cause.

Defendant points out that the plaintiff has been examined by four ophthalmolo-

gists to date, Drs. F. Phinizy Calhoun, O. B. Carlisle, Loys W. Willey and Milton M. Zaret. All of these doctors were chosen by plaintiff and three of them have testified by deposition that their medical knowledge does not include any test for determining whether Mr. Postell's cataract was caused by microwave radiation.[1] Dr. Zaret claims to be able to distinguish Mr. Postell's cataract as one induced by microwave radiation, and he is the only doctor who has examined Mr. Postell who claims to have some knowledge about the relationship between microwave radiation and cataracts.

Dr. Budd Appleton, the doctor the defendant would like to have examine Mr. Postell, appears to be an ophthalmologist of some note, having served as Chief of Ophthalmology Service at Walter Reed Army Medical Center in Washington, D.C. Dr. Appleton apparently contends to be an expert concerning the effect of microwave radiation on the human eye and takes the view opposite that of Dr. Zaret, who has examined the plaintiff. The defendant argues that unless Dr. Appleton is allowed to examine the plaintiff the plaintiff will have an unfair advantage in his presentation of expert testimony at trial.

Plaintiff's opposition to having Dr. Appleton examine Mr. Postell rests on two grounds. First, plaintiff argues that because Dr. Appleton was until 1978 a career Army doctor[2] and because the United States military depends heavily on the use of microwaves in missile control systems, he would be reluctant to provide an honest medical opinion as to the connection between microwave radiation and cataracts. Second, plaintiff argues that Dr. Appleton has to date demonstrated such an obvious bias against the contention that radiation can cause cataracts that he should not be allowed to examine Mr. Postell.[3]

This Court finds no reason or basis for plaintiff's conclusion that because Dr. Appleton is a former Army doctor that his medical opinion will be colored by that fact. Any such bias due to his service in the United States Army may go to the weight the jury wishes to assign to his testimony, but it surely does not affect its admissibility. Dr. Appleton's credentials as an ophthalmologist as presented in Exhibit A to Defendant's Supplemental Brief in support of its motion are well established. Thus, plaintiff's first ground for opposing defendant's motion to compel is without merit.

Plaintiff's second ground for his refusal to allow Dr. Appleton to examine his left eye is that Dr. Appleton has already opined that there is no evidence that any human being has ever sustained injury to the eyes from microwave energy.[4] Defendant has responded by asserting that Dr. Zaret, who has examined plaintiff, is the leading proponent of the medical view on which plaintiff has based his lawsuit. Defendant believes that if an ophthalmologist who has a preconceived notion that microwaves can cause cataracts was allowed to examine plaintiff, then an expert with a contrary medical view should also be allowed to examine the plaintiff.

Aside from determining damages in the event liability is found to exist, the most important question in this case is that of

1. The Court relies on defendant's representations as to the contents of the depositions of Drs. Calhoun, Carlisle, and Willey as those depositions have not been filed with the Clerk. Defendant cites Deposition of Calhoun, pp. 15- 18; Deposition of Carlisle, pp. 11 & 12, 28-30; and Deposition of Willey, pp. 24–26.

2. Plaintiff answered defendant's motion by alleging that Dr. Appleton is a current Army Colonel, being Chief of Ophthalmology at Walter Reed Army Medical Center. Defendant's Exhibit A to its supplemental brief in support of its motion shows that Dr. Appleton's tenure with the Army ended in June 1978, and that he is presently a private physician in St. Paul, Minnesota.

3. Plaintiff's chief source for this charge is P. Broadeur, *The Zapping of America* (1977), in which Dr. Appleton is quoted as contending that there is "no evidence to indicate that any human being ha[s] ever sustained injury to the eyes from exposure to microwave energy, regardless of how intensive the exposure may have been."

4. See note 3 supra.

whether the alleged microwave radiation leakage caused plaintiff's cataract. The plaintiff has allowed a leading ophthalmologist with a preconceived opinion as to the possibility of causation to examine him and consequently at trial the doctor will be able to testify directly about the cause of the plaintiff's cataract. Unless Dr. Appleton is likewise allowed to examine the plaintiff, the defendant will be at a distinct disadvantage in this "battle of the experts" at trial. While there may be no need for Dr. Appleton to examine Mr. Postell's eye to reach his established position about causation, that does not preclude such examination to determine the existence and extent of injuries from whatever cause. Because the plaintiff has permitted Dr. Zaret to examine him, fundamental fairness dictates that he now allow Dr. Appleton to do so also.

Accordingly defendant's motion to compel the plaintiff to submit to a physical examination of his left eye by Dr. Budd Appleton of St. Paul, Minnesota, is hereby GRANTED. This examination shall be conducted to determine the existence and extent of injuries due to cataracts and the possible cause thereof. The examination is to be conducted in the Atlanta, Georgia metropolitan area at a doctor's office selected by defendant at a time mutually agreeable to the parties within the next thirty (30) days. All expenses, including transportation, shall be borne by defendants. Pursuant to Fed.R.Civ.P. 35(a) the Clerk is directed to send notice of this order to the plaintiff as well as counsel for both parties.

SO ORDERED.